IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                              No. 07-40012-01-SAC

STEVEN J. JOHNSON,

Defendant.

MEMORANDUM AND ORDER

Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  This case comes before the court on three motions filed by defendant: motion to suppress evidence (Dk. 16), motion for DNA testing (Dk. 17), and motion regarding trial continuance (Dk. 36).  The government opposes both motions. An evidentiary hearing was held on May 9, 2007, at which time the court took the suppression motion under advisement.

**Motion to Suppress**

    **Facts**

At about 5:45 pm on January 26, 2007 Officer Ronnie Connell

1

observed a vehicle roll through a four-way stop sign at a speed he estimated to be approximately ten miles per hour, at the intersection at 3rd and Quinton Streets in Topeka, Kansas.  Defendant was a passenger in this vehicle.  The officer followed the vehicle and observed that it also failed to completely stop as it went through the four-way stop sign at 2nd and Quinton Streets. Officer Connell conducted a traffic stop for these offenses, which he knew to be a violation of both a Topeka Municipal Ordinance and a Kansas statute.

Officer Connell asked the driver, Nicholas Heathman, for his license and proof of insurance.  Heathman produced an outdated insurance card and did not have his driver's license with him, both of which the officer knew to be additional traffic violations.  Before running a computer check on Heathman, Officer Connell asked him about his activity before the stop. Heathman told Officer Connell he had been at a bar and that he had just washed his vehicle.  The officer saw that the vehicle was "dusty and dirty" so believed Heathman had lied about that matter.  Officer Connell also suspected that the driver may have been drinking because of his traffic violations, his nervousness, and his statement about having come from a bar.

For safety purposes Officer Connell advised both occupants to remain in the vehicle, and ran a wants and warrants check on Heathman.  He then asked

for and received Heathman's consent to a field sobriety test.  The officer had Heathman step out of his vehicle and walk behind his patrol vehicle, where the officer conducted a Nystagmus test. Heathman passed.

Upon escorting Heathman back to the Lincoln, which Heathmen reentered, the officer looked at the passenger, this defendant.  When the defendant looked up at the officer, the officer recognized him as a man with whom he had had at least three or four prior contacts and for whom arrest warrants were outstanding.  Officer Connell had been present earlier that week when defendant had failed to appear for his hearing in Municipal Court on a charge such as disobeying a lawful police order or interference, as a result of which arrest warrants were issued.  The officer did not recall defendant's name, so asked defendant for it, to which defendant replied, "Yeah, you know me."  The officer, still on the driver's side of the vehicle, asked defendant to exit the vehicle and meet him behind the vehicle, which defendant did. Defendant eventually provided his name to the officer.

Believing that city warrants were outstanding for defendant, the officer patted defendant down, conducted a criminal history check on him for warrants, learned there were eight warrants outstanding, and requested back-up from dispatch.  After the dispatcher confirmed that defendant was wanted on eight

3

city arrest warrants, the officer placed him in handcuffs and searched him incident to arrest.  On defendant's person the officer found marijuana and three cell phones which he turned off and returned to defendant. He then arrested defendant for the outstanding warrants and narcotics, placed him in handcuffs, and put him in his patrol vehicle.  Back up officers arrived about that time.

Thereafter, the officer approached the driver, who had reentered his vehicle, and obtained his consent to search the vehicle. Heathman stood between the two vehicles during the search.  During the course of this search, Officer Connell unsuccessfully tried to open the locked passenger door from the outside, then reentered the vehicle from the driver's side and unlocked it.  He then exited the vehicle, pulled the passenger door open, and saw a revolver on the floorboard between the passenger's seat and the door next to which defendant had been seated.  The gun was wedged handle up, barrel down in a crease between the seat and the door.  He saw that the gun was loaded and left it in place, then told the back up officer to handcuff the driver.  Heathman told Officer Connell that the gun belonged to the defendant and was not his.  Officer Connell had never found a weapon on defendant during their previous encounters, but he was aware of information from citizens that defendant was known to carry guns.

At some point when defendant was seated in the patrol vehicle,

Officer Connell noticed a light shining from the area of defendant's crotch. Correctly believing this to be a cell phone, the officer grabbed it.  When defendant moved his legs to the side, the officer observed a white substance which had not been in his vehicle before defendant entered it. Officer Connell believed this to be cocaine.

Defendant raises four grounds for suppression:  1) the vehicle was stopped without reasonable suspicion ; 2) defendant was detained for a longer period of time than reasonable to achieve the purposes of the initial stop and detention; 3) the officer had no cause to require the defendant to exit the vehicle; and 4) the seizure of the firearm was the fruit of the illegal acts above.

**Initial Stop**

The court finds no factual support for defendant's contention that Officer Connell lacked reasonable suspicion to conduct a traffic stop of the vehicle in which he was riding.  Officer Connell's testimony is credible and is uncontradicted that he observed the vehicle fail to stop at two stop signs.  No contradictory testimony has been offered.  Nothing about the lighting conditions present or the location of Officer Connell in relation to the vehicle casts any doubt upon his testimony.  Failing to stop is a violation of  KSA § 8-1528b and Topeka Municipal Code § STO 59-b.

In deciding the validity of the initial stop, the court looks at whether it was "objectively justified." *United States v. Botero-Ospina*, 71 F .3d 783, 788 (10th Cir. 1995) (en banc), *cert. denied*, 518 U.S. 1007 (1996).  To be reasonable under the Fourth Amendment, "a law enforcement officer 'must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping an automobile.' "  *United States v. Alvarado*, 430 F.3d 1305, 1308 (10th Cir. 2005) (quoting *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003)). The constitutional reasonableness of a traffic stop does not depend on the officer's actual motive in conducting the stop.  *Whren v. United States*, 517 U.S. 806, 812-13 (1996).  "Thus, 'when evaluating the reasonableness of the initial stop of a vehicle, our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.' " *Alvarado*, 430 F.3d at 1308 (quoting *United States v. Zabalza*, 346 F.3d 1255, 1258 (10th Cir. 2003)).  Because Officer Connell's testimony easily meets these well known standards, the initial stop shall be upheld.

### Length of detention

Defendant summarily contends that Officer Connell's "extensive questioning and re-questioning of the driver's whereabouts prior to the stop

without making any progress toward issuing the ticket for the stop sign violation extended the length of the stop."  Dk. 16, p. 6.  The government responds that the length of the detention was reasonable given the facts that the driver was not in possession of a driver's license, had no valid insurance, lied about having recently washed the vehicle, and was possibly driving while intoxicated.  Additionally, the government contends that defendant was free to leave during the driver's detention and was not detained until the moment the officer reapproached the vehicle after having given the driver a sobriety test.

No evidence has established the duration of the stop or any portions thereof. It is clear that a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). " A traffic stop does not become unreasonable merely because the officer asks questions unrelated to the initial purpose for the stop, provided that those questions do not unreasonably extend the amount of time that the subject is delayed.*" United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006) (quoting *United States v. Martin*, 422 F.3d 597, 601-02 (7th Cir. 2005)). Questioning during a search does not violate the Fourth Amendment if it does not extend the stop " 'beyond the time reasonably required to complete [the stop's

original purpose].' " *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405 (2005)).   Thus

"[a]s long as the [deputy's] questioning did not extend the length of the detention,

... there is no Fourth Amendment issue with respect to the content of the

questions."  *United States v. Wallace*, 429 F.3d 969, 974 (10th Cir.2005); *see*

*United States v. Stewart*,  473 F.3d 1265, 1269 (10th Cir. 2007) (holding the

correct Fourth Amendment inquiry assuming the detention is legitimate is whether

the questions extended the time that a driver was detained, regardless of the

questions' content. )

       This court's examination is clear.

> ... we need not make a time and motion study of traffic stops; we consider
> the detention as a whole and the touchstone of our inquiry is reasonableness.
> ...we must consider the individual circumstances that confronted the
> troopers, using "common sense and ordinary human experience" to
> determine whether "the police acted less than diligently, or ... unnecessarily
> prolonged [the] detention." *United States v. Sharpe*, 470 U.S. 675, 685, 105
> S. Ct. 1568, 84 L. Ed. 2d 605 (1985).

*United States v. Patterson*, 472 F.3d 767, 776 (10th Cir. 2006).

       The Tenth Circuit recently rejected a challenge similar to the one
made by this defendant in these words:

>        Even if this task might have been performed slightly faster had [the
> officer] not been asking questions, the time involved was not "beyond the
> time reasonably required to complete that [task]." *Caballes*, 125 S. Ct. at
> 837; *see United States v. Martin*, 422 F.3d 597, 601-02 (7th Cir. 2005) ( "A
> traffic stop does not become unreasonable merely because the officer asks
> questions unrelated to the initial purpose for the stop, provided that those
> questions do not unreasonably extend the amount of time that the subject is
> delayed."); *United States v. Childs*, 277 F.3d 947, 949 (7th Cir.2002) (en

banc) ("questions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable"). Therefore, this questioning was lawful.

*Alcaraz-Arellano*, 441 F.3d at 1259.

Recent cases by the Tenth Circuit support this finding. *See United States v. Garner*, 2007 WL 949746, *3 (10th Cir. 2007); *United States v. Yeomans*, 2007 WL 30032, *5 (10th Cir. 2007); *United States v. Flores-Ocampo*, 173 Fed. Appx. 688, 695, 2006 WL 856220 (10th Cir. 2006) (finding as long as an officer's questions do not appreciably extend the detention, the content of the questions is not subject to challenge under the Fourth Amendment ); *United States v. Jeter*, 175 Fed. Appx. 261, 264, 2006 WL 1266523 (10th Cir. 2006); *United States v. Patterson*, 472 F.3d 767, 777 -778 (10th Cir. 2006).

The facts elicited from Officer Connell, the sole witness at the hearing, fail to show that he extensively questioned or requestioned of Heathman or asked questions unrelated to the purpose for the stop.  No evidence supports defendant's contention that the stop was appreciably lengthened by any questions unrelated to the stop, nor do other facts show that defendant's detention was unreasonable.

**Seizure of defendant**

Defendant separately complains that requiring him to exit the vehicle

was an illegal seizure because that action was not within the scope of the traffic stop.  Defendant would apparently have the court ignore the fact that defendant was asked to exit the vehicle only after the officer recognized him as a person for whom he knew arrest warrants were pending.  The officer's belief was both reasonable and correct, as confirmed by dispatch at the time.

Under the circumstances, separating the defendant from the vehicle was a reasonable request to further officer safety.  Where officers have no probable cause to arrest a person, the following reasonableness test is applied to that person's removal from his vehicle: "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Dennison*, 410 F.3d 1203, 1212 (10th Cir. 2005), quoting *Terry*, 392 U.S. at 27. This test is met here. Officer Connell was well aware of defendant's prior criminal history, of his outstanding arrest warrants, and of his reputation for carrying a gun.

Additionally, the gun was not found as a result of defendant's exiting the vehicle, but as a result of the subsequent search of the vehicle pursuant to the driver's consent.  Thus, even assuming illegality in the seizure of defendant, no causal connection exists between that act and the seizure of the weapon.

**Fruit of the poisonous tree**

10

Defendant's reliance upon the fruit of the poisonous tree doctrine, *see United States v. McKneely*, 6 F.3d 1447, 1450 (10th Cir. 1993), *citing United States v.Erwin*, 875 F.2d 268, 269 n. 2 (10th Cir. 1989), is equally unavailing. Because none of defendant's arguments above has any merit whatsoever, the fruit of the poisonous tree doctrine is inapplicable.  Defendant's suppression motion shall be denied.

**Motion for DNA Testing**

In this motion, defendant asks the court to expedite DNA testing of the revolver which is the subject of this prosecution.  Defendant's brief states his preferred method of so doing - that the court order the government to pay for DNA testing at a private laboratory.[1]  At the hearing held on May 9, 2007, defendant changed courses in stating that he is not asking the court to order the United States to pay for the test. After other discussion by counsel at the hearing, the court set a close trial date in an attempt to assist in expediting the testing by the Kansas Bureau of Investigation, and found the DNA motion moot but recognized the potential need to revisit the issue later.  Defendant's present motions compels the court to revisit the issue of DNA testing now.

---

[1]Defense counsel stated at the hearing that the cost of such an examination and report, excluding trial testimony, would be approximately $6,000.

**Facts**

Defendant's theory of defense is that the gun found between the passenger seat and the passenger door belonged to driver Heathman and not to him. When defendant exited the vehicle after Officer Connell recognized him, Heathman remained in the vehicle, giving him an opportunity to place the weapon in the location where it was found.

With defendant's consent, officers took an oral swab from him and submitted it, along with the firearm, to the Kansas Bureau of Investigation Laboratory to compare defendant's swab to any mitochondrial DNA that may be found on the firearm. Both counsel agree that they would like the DNA test to be completed before trial but the Kansas Bureau of Investigation has a large backlog of cases, does not know when it will be able to run the test, and is still working on cases which came in during calendar year 2005.  Although the KBI laboratory spokesman, upon the government's request, has agreed to ask that the DNA test be expedited, there is no guarantee that the test will be done before trial.[2]

Defendant's brief states his willingness to waive speedy trial rights for some limited period, but reflects that he does not want to be held subject to conditions on his release indefinitely.  His subsequent motion revoking his

---

[2]No suggestion of bad faith on the part of the government has been made or would be warranted.

counsel's waiver of speedy trial rights asserts that it is the government's responsibility to provide him with the exculpatory evidence before his Speedy Trial time runs.  It thus appears that defendant currently asks the court to order the government to pay for the test to be done by a private firm in the event the KBI cannot conclude the test by the date of trial.

The parties agree that a positive DNA test would prove to a high degree of certainty that defendant or his maternal relatives had handled the gun. Defendant contends that "a negative test would virtually eliminate defendant from those who had handled the firearm," that the DNA evidence could be "highly exculpatory," and that failing to disclose such evidence to him would be a due process violation. *See United States v. Bohl*, 25 F.3d 904 (10th Cir. 1994). Dk. 17, p. 2. The court finds this contention to be an overstatement. A negative DNA test would not necessarily eliminate defendant from those who had handled the firearm because other factors, such as defendant's having worn gloves or having wiped down the weapon, could also produce a negative test result.[3]

The government posits that justice does not compel that the DNA test

---

[3]Perhaps in recognition of the limited value of a negative test result, defendant additionally filed a Rule 17 motion (Dk. 29), asking this court to issue a subpoena duces tecum to take an involuntary oral swab from Heathman, whose current location is unknown, so that his DNA could also be compared with any DNA on the gun. That motion was denied.

be expedited since other evidence points toward defendant's possession of the gun,

*i.e.*, the driver said the gun was defendant's and the driver would

likely not leave his own gun near the passenger door.  It also submits several policy

reasons for not ordering the expedited test: 1) ordering it would violate the

separation of powers doctrine; 2) ordering it would raid an unknown someone's

coffers perhaps in violation of the separation of powers doctrine; and 3) ordering it

would create bad precedent, permitting every defendant who might theoretically

benefit from spending government money on expensive scientific tests to do so.

The government suggests that if defendant wants a private laboratory to do the

testing, defendant should spend his own funds or get it from the Public Defender's

budget.

*Brady v. Maryland*, 373 U.S. 83 (1963) imposes an absolute duty on

the prosecutor to produce to defendant all materially favorable evidence in the

State's possession. *Brady* "does not place any burden upon the Government to

conduct a defendant's investigation or assist in the presentation of the defense's

case." *East v. Scott,* 55 F.3d 996, 1004 (5th Cir. 1995).  Where, as here, the

government possesses evidence which is not known to be exculpatory but which

may be subjected to subsequent chemical testing, the results of which may or may

not be exculpatory, the relevant analysis of the government's duty is not under

*Brady* but under *Arizona v. Youngblood*, 488 U.S. 51 (1988).

In *Youngblood*, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not require the "State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57.  The Court further stated, "If the [state supreme] court meant ... that the Due Process Clause is violated when the police fail to use a particular investigatory tool, we strongly disagree.... [T]he police do not have a constitutional duty to perform any particular tests." *Id*. at 58-59, 109 S. Ct. 333. The Tenth Circuit has followed suit. *See Riggs v. Williams*, 87 Fed. Appx. 103, 106-107, 2004 WL 95870,*3 (10th Cir. 2004) (rejecting habeas claim in light of the petitioner's failure to offer any "legal authority to support his claim that the police had a duty to test [his] shoes" for the presence of blood).  Thus under current law, the government has no pretrial duty to use a particular investigatory tool such as DNA testing or to discover exculpatory evidence.  Rather, in such cases, "the defendant is free to argue to the finder of fact that a [particular] test might have been exculpatory," *Youngblood*, 488 U.S. at 59, and the government is free to argue that the DNA test might not have been exculpatory.

In short, defendant has no constitutional right to have DNA testing

done prior to trial. *See e.g., Luckett v. Berghuis,* 2006 WL 1779383, *8 (E.D. Mich. 2006); *Garner v. Harry,* 2006 WL 3371128, *10 (E.D. Mich. 2006); *Johnson v. Rollins*, 2006 WL 2546807 (E.D.Mo. 2006); *Coy v. Renico*, 414 F. Supp. 2d 744, 777 (E.D. Mich. 2006); *Venticinque v. Burge,*  2005 WL 3369093, *5 (E.D.N.Y.2005); *Guidry v. Cain*, 2005 WL 1330133, *6 (W.D.La.2005)*; Jimenez v. New Jersey,* 245 F. Supp.2d 584, 587-588 (D.N.J.2003); *Harrison v. Abraham*, 1996 WL 752285, *4 (E.D.Pa.1996); *U.S. ex rel. Lieberman v. Washington,* 1995 WL 513516, *8 (N.D.Ill.1995); *Brison v. Police Officer Tester*, 1994 WL 709401, *12 (E.D.Pa.1994). Accordingly, defendant's motion for DNA testing is denied.

**Motion Regarding Trial Continuance**

        In this motion, defendant revokes his counsel's request for a continuance of the trial and demands a trial date within the deadlines required by the Speedy Trial Act. This motion is moot because the current trial date is already within the parameters of the Speedy Trial Act given the excludable time triggered by defendant's filing of the current motions and the court's decision of them. Accordingly, even if the court disregards counsel's prior oral request for a continuance of this matter, the same trial date remains.

        IT IS THEREFORE ORDERED that defendant's motion to suppress evidence (Dk. 16), motion for DNA testing (Dk. 17), and motion regarding trial

continuance (Dk. 36) are each denied.

Dated this 6th day of June, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge